IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE HILL, | Civil No. 3:24-cv-22 |
| Plaintiff | (Judge Mariani) |
| v. | |
| JOHN RIVELLO, *et al.*, | |
| Defendants | |

## MEMORANDUM

Plaintiff Tyrone Hill ("Hill"), an inmate housed at the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Superintendent John Rivello, Captain Long, Lieutenant Yonkers, (collectively, the "moving Defendants"), and five John Doe individuals. Hill alleges that Defendants violated his constitutional rights under the Eighth Amendment when oleoresin capsicum ("OC") spray was released against another inmate, three stories below his cell, which caused him to fall on two occasions.

Presently ripe for disposition is the moving Defendants' motion (Doc. 20) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part. (Doc. 20). The Court will also direct service of the complaint on the newly identified Defendants.

I.      **Allegations of the Complaint**

The allegations of Hill's complaint stem from three separate incidents at SCI-Huntingdon—the use of OC spray against a fellow inmate on June 27, 2023; Hill's fall down the stairs on July 31, 2023; and Hill's fall in the shower on November 11, 2023. (Doc. 1).

On the morning of June 27, 2023, Hill was confined in his cell (CA-437) when he Defendant Yonkers and several other correctional officers approached a cell three floors below him (CA-142). (*Id.* ¶¶ III(C)(1-8)). Hill alleges that these prison officials had riot gear, breathing respirators, a stun shield, and two large canisters of OC spray. (*Id.*). Hill avers that Defendant Rivello gave the orders to prison officials to perform the cell extraction of another inmate. (*Id.* ¶ III(C)(7)). He then alleges that Defendant Yonkers and the other correctional officers discharged OC spray into cell CA-142. (*Id.* ¶ III(C)(10)). There was no ventilation and the OC spray rose to the fourth floor and "stayed there like fog." (*Id.* ¶ III(C)(11)). Hill alleges that the OC spray burned his eyes, made him choke, caused him to urinate on himself, and caused back spasms. (*Id.* ¶ III(C)(12)). The back spasms allegedly caused him to fall. (*Id.*). During this incident, Hill was able to use his inhaler to help him breathe. (*Id.*). "A long while later," when the housing tier was opened for all inmates, Hill was sent to medical and received medication for his back spasms. (*Id.* ¶ III(C)(13)). When Hill inquired as to why he was not evacuated to a safe area prior to the use of OC spray, the Block Sergeant and Unit Manager allegedly informed him that Defendant Long ordered that Hill remain in his cell during the incident. (*Id.* ¶ III(C)(15)).

Hill next alleges that the "residual consequences of this cruel and unusual corporal punishment" caused him to fall down steps on July 31, 2023. (*Id.* ¶ III(C)(14)). Hill claims the fall caused injury to his right knee and ankle. (*Id.*).

Further, Hill alleges that, as a result of the OC spray incident in June of 2023, he had back spasms in the shower on November 11, 2023. (*Id.*). He asserts that the back spasms made his right knee buckle, causing him to collapse in the shower in front of forty other inmates. (*Id.* ¶ V).

For relief, Hill seeks compensatory and punitive damages. (*Id.* ¶ VI).

## II.  Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment

4

would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Personal Involvement

Defendants Long and Rivello seek to dismiss the claims against them based on Hill's failure to set forth sufficient allegations of their personal involvement in the alleged wrongful conduct. (Doc. 21, pp. 8-11). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be

predicated solely on the operation of respondeat superior." *Evancho*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

The Court does not agree that Hill failed to set forth the requisite personal involvement against Defendant Long. The complaint specifically alleges that Defendant Long ordered that Hill remain in his cell during the use of OC spray incident. (Doc. 1 ¶ III(C)(15)). Accordingly, the Court declines to grant the motion to dismiss on this basis.

Hill also alleges that Defendant Rivello gave orders to his subordinates to perform the cell extraction of another inmate. (Doc. 1 ¶ III(C)(7)). Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may

6

be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).

The Court finds that Hill has not set forth a plausible claim against Defendant Rivello. The complaint only alleges that Defendant Rivello ordered his subordinates to perform the cell extraction of another inmate. Hill does not allege that Defendant Rivello ordered the correctional officers to use an excessive amount of OC spray, that he was aware of the

7

alleged excessive use of OC spray and took no action to curb it, that he ordered the correctional officers to target Hill with OC spray, or that he was aware Hill was susceptible to OC spray. Hill's attempt to hold Defendant Rivello responsible for the actions of others (the cell extraction) based on his supervisory position, is not a proper basis to establish liability for the alleged constitutional wrongdoing at issue. The Court will grant the motion to dismiss the claims against Defendant Rivello.

### B. Qualified Immunity

Hill alleges that his exposure to secondhand OC spray constituted cruel and unusual punishment in violation of his Eighth Amendment rights. Defendants argue that they are entitled to qualified immunity "because it is not clearly established that the secondhand exposure to OC spray, in response to another inmate's actions on the housing block, would violate an individual's rights." (Doc. 21, p. 11).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be

addressed first). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)). To make this determination, the Court "look[s] first for applicable Supreme Court precedent." *Id.* "Even if none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court of Appeals could clearly establish a right for purposes of qualified immunity." *Id.* (quoting *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)).

"[I]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984); *see also Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010) (noting that it is a violation of the Eighth Amendment "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm"); *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (noting that the use of chemical agents can violate the Eighth

Amendment when done so as a "malicious or sadistic application of force"); *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (citing *Soto* for the same conclusion). Accordingly, in light of the above "robust consensus of cases of persuasive authority," *Taylor*, 575 U.S. at 826, the Court concludes that inmates have a clearly established right, protected by the Eighth Amendment, to be free from the unnecessary use of chemical agents without penological justification.

Here, Hill alleges that Defendants used "excessive" amounts of OC spray on a fellow inmate, that Hill was intentionally left in his cell during this incident, and that he suffered unnecessary pain as a result of his exposure to OC spray. Therefore, at this juncture, Hill has pled facts alleging misuse of excessive amounts of OC spray to inflict unnecessary pain. In light of the body of case law set forth above, the Court concludes that Hill had a clearly established right, protected by the Eighth Amendment, to be free from the use of excessive amounts of OC spray. The Court declines to grant Defendants' motion to dismiss on this ground.

## IV.    Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, the Court concludes that it would be futile to grant Hill leave to file an amended complaint with respect to his claims against Defendant Rivello.

## V.    Federal Rule of Civil Procedure 4(m)

Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff has 90 days from the date he filed his complaint to serve the complaint on the defendants. FED. R. CIV. P. 4(m). Upon a showing of good cause for the failure to serve, the court must extend the time for service; the court can, at its discretion, extend the time for service even if plaintiff has not shown good cause for the delay. FED. R. CIV. P. 4(m). The factors a court should consider in evaluating whether good cause exists are: (1) the reasonableness of the plaintiff's efforts to effect service; (2) prejudice to the defendant because of untimely service; (3) whether the plaintiff has moved for an enlargement of time; and (4) whether the statute of limitations will bar the plaintiff's claims if the action is dismissed. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097-98 (3d Cir. 1995).

The John Doe Defendants were named in the complaint that was filed on January 4, 2024. (Doc. 1). The Court granted Hill leave to conduct limited discovery to identify the John Doe Defendants. (Doc. 18). In response, Hill has identified the John Doe Correctional Officers as follows: CO A. Tress, CO Kirsh, CO Ainsworth, CO J. Myers, CO Cothard, and CO K. Deihl. (Doc. 25). Accordingly, the Court will direct service on these individuals.

11

## VI. Conclusion

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion to dismiss the complaint. (Doc. 20). The Court will also direct service on the newly identified Defendants. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: October 23, 2024