IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRONE HILL, | : | Civil No. 3:24-cv-22 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| JOHN RIVELLO, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Tyrone Hill ("Hill"), an inmate housed at the State Correctional Institution, Huntingdon, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Superintendent John Rivello, Captain Long, Lieutenant Yonkers, Correctional Officer Tress, Correctional Officer Kirsh, Correctional Officer Ainsworth, Correctional Officer Myers, Correctional Officer Cothard, and Correctional Officer Deihl. Hill alleges that Defendants violated his constitutional rights under the Eighth Amendment when oleoresin capsicum ("OC") spray was released against another inmate, three stories below his cell, which caused him to fall on two occasions.

Presently before the Court is Hill's motion to compel discovery. (Doc. 48). For the reasons set forth below, the motion will be granted in part and denied in part.

I.   **Factual Background**

The allegations of Hill's complaint stem from three separate incidents at SCI-Huntingdon—the use of OC spray against a fellow inmate on June 27, 2023; Hill's fall down the stairs on July 31, 2023; and Hill's fall in the shower on November 11, 2023. (Doc. 1).

On the morning of June 27, 2023, Hill was confined in his cell (CA-437) when he Defendant Yonkers and several other correctional officers approached a cell three floors below him (CA-142). (*Id.* ¶¶ III(C)(1-8)). Hill alleges that these prison officials had riot gear, breathing respirators, a stun shield, and two large canisters of OC spray. (*Id.*). Hill avers that Defendant Rivello gave the orders to prison officials to perform the cell extraction of another inmate. (*Id.* ¶ III(C)(7)). He then alleges that Defendant Yonkers and the other correctional officers discharged OC spray into cell CA-142. (*Id.* ¶ III(C)(10)). There was no ventilation, and the OC spray rose to the fourth floor and "stayed there like fog." (*Id.* ¶ III(C)(11)). Hill alleges that the OC spray burned his eyes, made him choke, caused him to urinate on himself, and caused back spasms. (*Id.* ¶ III(C)(12)). The back spasms allegedly caused him to fall. (*Id.*). During this incident, Hill was able to use his inhaler to help him breathe. (*Id.*). "A long while later," when the housing tier was opened for all inmates, Hill was sent to medical and received medication for his back spasms. (*Id.* ¶ III(C)(13)). When Hill inquired as to why he was not evacuated to a safe area prior to the use of OC spray, the Block Sergeant and Unit Manager allegedly informed him that Defendant Long ordered that Hill remain in his cell during the incident. (*Id.* ¶ III(C)(15)).

2

Hill next alleges that the "residual consequences of this cruel and unusual corporal punishment" caused him to fall down steps on July 31, 2023. (*Id.* ¶ III(C)(14)). Hill claims the fall caused injury to his right knee and ankle. (*Id.*).

Further, Hill alleges that, as a result of the OC spray incident in June of 2023, he had back spasms in the shower on November 11, 2023. (*Id.*). He asserts that the back spasms made his right knee buckle, causing him to collapse in the shower in front of forty other inmates. (*Id.* ¶ V).

## II. Legal Standard

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought. FED. R. CIV P. 37(a). The moving party must demonstrate the relevance of the information sought to a particular claim or defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...

Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery if the discovery sought is unreasonably cumulative, duplicative, or readily obtainable from some other source, the party seeking discovery has had ample opportunity to obtain the information through discovery, or the proposed discovery is outside the scope permitted by Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C).

## III.    Discussion

Hill takes issue with Defendants' responses to his discovery requests. (Docs. 48, 50-51). Specifically, Hill seeks: (1) video footage of the incident; (2) information related to security procedures; and (3) misconduct reports related to another inmate. (Doc. 50). The Court will address each request in turn.

### A.    Request for Video Footage

Hill first seeks an order to compel Defendants to show him the relevant video footage of the incident on June 27, 2023. (Doc. 50, at 6-7). Defendants assert that a Court Order is not necessary because, at the time they filed their opposition brief on April 29, 2025, they were scheduling a time for Hill to review the relevant video footage within the next 14 days. (Doc. 56, at 3-4). The Court will accept the representation of defense counsel that Hill has

4

been provided the opportunity to review the relevant video footage. Therefore, the Court will grant this request. The Court will also direct Defendants to file a sworn affidavit or declaration on the docket confirming that Hill has reviewed the relevant video footage. In the event that Hill has not been afforded the opportunity to review the relevant video footage, he may renew his motion with respect to this discovery request.

B.      Request for Information Related to Security Procedures

Hill next seeks production of Policy 6.3.1—Facility Security Procedures Manual, Policy 5.1.1—Training and Staff Development, and the "Commissioned Officer Use of Force Pocket Guide." (Doc. 50, at 2, 9; Doc. 51 ¶¶ 1, 9). The requested documents relate to contraband, the use of force, video recording, defensive weapons, cell extractions, and special response team training requirements. (Doc. 51 ¶ 1). Defendants object to this request and argue that the documents include information that is security-sensitive, privileged, confidential, and irrelevant. (Doc. 51, at 5, 9; Doc. 56, at 4-6).

With respect to Policy 6.3.1, Facility Security Procedures Manual, many federal courts have declined to compel the disclosure of this policy, which is highly confidential in the interests of prison safety and security. *See, e.g., Coit v. Garman*, No. 1:17-cv-1438, 2018 WL 3818853, at *2 (M.D. Pa. Aug. 10, 2018); *Eggleston v. Mitchell*, No. 1:12-cv-1220, 2013 WL 5351053, at *1 (M.D. Pa. Sept. 23, 2013); *Victor v. Lawlor*, No. 3:08-cv-1374, 2011 WL 1884616, at *2 (M.D. Pa. May 18, 2011). Hill argues that the policy is relevant to determine whether the Defendants acted with a legitimate penological interest during the

5

use of OC spray incident. (Doc. 50, at 5). Hill failed to persuade the Court that the reasons for production outweigh legitimate security concerns. An inmate's access to the sensitive security procedures in Policy 6.3.1 presents a grave threat to institutional security. Therefore, Defendants' objection to the production of Policy 6.3.1 is sustained and the motion to compel is denied as to this policy.

As to Policy 5.1.1, Training and Staff Development, it appears that the DOC has made this policy available to the public. *See* Policy 5.1.1, https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/05.01.01%20training%20and%20staff%20development.pdf (last visited Jan. 8, 2026); *see also Yates v. Painter*, No. 3:05-cv-1723, 2010 WL 11661295, *2 (M.D. Pa. March 26, 2010) (noting that Policy 5.1.1 is available to the public). Accordingly, the Court will grant this request, and Defendants will be directed to produce Policy No. 5.1.1, provided it is not subject to any legitimate security concerns.

Hill next requests production of the Commissioned Officer Use of Force Pocket Guide. This document presumably provides guidelines regarding the application of the force needed to gain compliance of an inmate. The Court concludes that this information appears to be relevant to the claims raised in Hill's complaint. However, the document may also contain confidential information that raises legitimate security concerns. Accordingly, the Court will grant the motion to compel to the extent that Defendants will be directed to

provide Hill a declaration that fully and accurately summarizes the Commissioned Officer Use of Force Pocket Guide.

C.     Request for Misconduct Reports of Another Inmate

Hill also seeks the misconduct reports issued against fellow inmate Gospodev. (Doc. 50, at 10-11). He argues that the reports are evidence of Defendants' use of excessive force and impropriety. (*Id.*). Defendants argue that disclosing another inmate's misconduct reports is not pertinent to the issue before the Court, it risks the other inmate's safety, and the information is highly sensitive. (Doc. 56, at 7-8).

The documents requested by Hill seeks information related to another inmate, which is not permitted to be disclosed to him pursuant to Pennsylvania Department of Corrections ("DOC") policy. Pursuant to DC-ADM 003, Release of Information, inmates are not permitted access to the records of their fellow inmates. *See* DC-ADM 003, https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/003%20Release%20of%20Information.pdf (last visited Jan. 8, 2026). The policy states, in relevant part, "[a]n inmate is prohibited from receiving inmate information pertaining to another inmate other than him/herself." (*Id.* § IV.A.5).

And, as argued by Defendants, there are sound security and confidentiality reasons to prohibit inmates from obtaining such information about one another. (Doc. 56, at 7-8). Courts within the Third Circuit have rejected similar discovery requests as unduly infringing upon the privacy interests of other inmates. *See, e.g., Robinson v. Folino*, 2016 WL

7

4678340, at *3 (W.D. Pa. Sept. 7, 2016) ("Misconducts filed against inmates...would necessarily contain information regarding those inmates that Plaintiff should not be privy to for both privacy and security reasons"). Accordingly, Defendants' objection to this request is sustained and Hill's motion to compel is denied as to the production of his fellow inmate's misconduct reports.

## IV.  Conclusion

Consistent with the foregoing, Hill's motion to compel will be granted in part and denied in part. (Doc. 48). A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: January 9, 2026